BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
AUGUST FLENTJE
Deputy Director
EREZ REUVENI
Assistant Director
Office of Immigration Litigation

ERIC HAMILTON
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Director
CRISTEN C. HANDLEY
ELISABETH J. NEYLAN
Trial Attorneys
Federal Programs Branch

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
(Albany Division)

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF NEW YORK; KATHLEEN HOCHUL, Governor of New York, in her Official Capacity; LETITIA A. JAMES, Attorney General of New York, in her Official Capacity; MARK J.F. SCHROEDER, Commissioner of the New York State Department of Motor Vehicles, in his Official Capacity.<br><br>　　　　Defendants. | No. 1:25-CV-0205 (AMN/MJK)<br><br><br>**COMPLAINT** |

1

## INTRODUCTION

1. The United States is currently facing a crisis of illegal immigration. *See, e.g.*, Proclamation 10,866, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 20, 2025). And the Federal Government is set to put a stop to it. While States are welcome partners in that effort, it is their prerogative as separate sovereigns to refrain. But a State's freedom to stand aside is not a freedom to stand in the way. And where inaction crosses into obstruction, a State breaks the law. The State of New York is doing just that. It must be stopped.

2. In 2019, New York amended its Vehicle and Traffic Law to include a provision known as the "Green Light Law." *See* N.Y. Veh. & Traf. § 201.12. The Green Light Law generally bars the sharing of New York State Department of Motor Vehicles ("DMV") records or information (*e.g.*, addresses, vehicle registrations, identification photos) with federal immigration agencies. *See id.* § 201.12(a). And it requires New York's DMV Commissioner to promptly tip off any illegal alien when a federal immigration agency has requested his or her information. *See* § 201.12(b). As its supporters and sponsors made clear, the Green Light Law was passed to directly impair the enforcement of the federal immigration laws in New York. And those lawmakers have achieved their objective.

3. DMV information is critical to federal immigration agencies—in particular their ability to identify and remove those who are here illegally. As important, DMV information is critical to keeping federal immigration officers safe. From vehicle stops to border crossings to executing arrests and searches, immigration authorities depend on these records to assess real-time the situations they face and the people they encounter. But New York's Green Light Law deprives

them of this insight; and in turn, unnecessarily forces brave law enforcement officers into dangerous and uncertain circumstances.

4. For some, like Attorney General Letitia James, these are all the markings of a "well crafted"[1] law designed to ensure that "information of undocumented immigrants . . . will be protected" from federal immigration authorities.[2] But the Constitution sees things differently. New York's Green Light Law violates the Supremacy Clause at every turn.

5. Foremost, federal immigration law expressly preempts state and local laws that restrict sharing information with the Federal Government "regarding the immigration status . . . of any individual." *See* 8 U.S.C. § 1373(a). But that is *exactly* what the Green Light Law does.

6. Moreover, under conflict preemption principles, a State cannot fashion "an obstacle to the accomplishment and execution of the full purposes and objectives" of the federal immigration laws. *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). But again, that is the *entire point* behind the Green Light Law—impeding the Federal Government's ability to learn and share valuable information to remove illegal aliens.

7. Further, well-established principles of intergovernmental immunity prohibit a State from directly regulating or discriminating against the Federal Government. Yet here too, the Green Light Law does so *on its face*. The Law directly regulates the Federal Government's own operations: Even in the narrow circumstances where one part of the Government is given access

---

[1] *See* Office of the New York State Attorney General, *Attorney General James' Statement on Green Light Bill* (June 17, 2019), https://ag.ny.gov/press-release/2019/attorney-general-james-statement-green-light-bill.
[2] *See* Spectrum News, *New York AG James Committed to Defending Green Light Bill* (Aug. 5, 2019), https://spectrumlocalnews.com/nys/central-ny/politics/2019/08/05/letitia-james-interview-green-light-bill.

to New York DMV material, it is still criminally barred from sharing it with federal immigration components. Relatedly, the Law singles out federal immigration agencies for adverse treatment—the exact discrimination the Constitution forbids.

8. By intent and design, the Green Light Law is a frontal assault on the federal immigration laws, and the federal authorities that administer them. More than that, the Law has had dangerous consequences—precisely because it has worked as intended. But federal law does not tolerate this sort of obstruction. Nor does the Constitution. New York's Green Light Law cannot stand.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

10. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b), because at least one Defendant resides in this District and a substantial part of the acts or omissions giving rise to this action arose from events in this District.

11. This Court has authority to provide the relief requested under its inherent equitable powers, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

## PARTIES

12. Plaintiff is the United States of America. It regulates immigration under its statutory and constitutional authorities. It is responsible for enforcing the federal immigration laws through its agencies—including the Departments of Justice, State, Labor, and Homeland Security ("DHS"), along with DHS's component agencies, including U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").

13. Defendant New York is a State of the United States.

14. Defendant Kathleen Hochul is the Governor of New York.

15. Defendant Letitia A. James is the Attorney General of New York.

16. Defendant Mark J.F. Schroeder is the Commissioner of the New York State Department of Motor Vehicles.

17. All individual Defendants are being sued only in their official capacities.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

18. The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

19. "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394. This authority stems from "the National Government's constitutional power to 'establish an uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* (citations omitted).

20. Accordingly, "Congress [has] the right, as it may see fit, to expel aliens of a particular class, or to permit them to remain," and "has undoubtedly the right . . . to take all proper means to carry out the system which it provides." *Fong Yue Ting v. United States*, 149 U.S. 698, 714 (1893); *see, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (the United States has the "exclusive[]" control over "any policy toward aliens").

21. Exercising this function, the Federal Government has devised an "extensive and complex" statutory scheme for the "governance of immigration and alien status." *Arizona*, 567 U.S. at 395. This scheme codifies the Executive's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or are found to be, unlawfully in the United States. *E.g.*, 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231.

22. Taken together, "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 396. Indeed, New York itself put it well: "The removal of undocumented immigrants is [an] exclusively federal function," and the Federal Government alone decides "not only *who* may be removed from the United States, but *how* such individuals should be identified, apprehended, and detained." *Amici Br. of New York et al.* at 3, *Arizona v. United States*, No. 11-182, 2012 WL 1054493 (U.S. Mar. 26, 2012).

23. Nonetheless, "[c]onsultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. "Absent any cooperation at all from local officials," the immigration system—like other federal programs—"may fail or fall short of [its] goals[.]" *New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999).

24. The immigration laws thus provide for basic principles of cooperation between state and local governments and the Federal Government. For instance, federal authorities must "make available" to state and local authorities "investigative resources . . . to determine whether individuals arrested by such authorities for aggravated felonies are aliens[.]" 8 U.S.C. § 1226(d)(1)(A). Likewise, federal officials must also "designate and train officers and employees . . . to serve as a liaison to" state and local officials "with respect to the arrest, conviction, and release of any alien charged with an aggravated felony[.]" *Id.* § 1226(d)(1)(B); *see id.* §§ 1226(c), 1231(a). And state and local officials may "cooperate with the [Federal Government] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

25. Naturally, information-sharing across (and within) governments is integral to this system functioning. Section 1373 thus requires federal officials to "respond to an inquiry" by state or local officials "seeking to verify or ascertain the citizenship or immigration status of any

individual within the[ir] jurisdiction." *Id.* § 1373(c); *see* 6 U.S.C. § 482(b) (requiring information-sharing among federal agencies).  By the same token, state and local government officials "may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a); *see id.* §§ 1373(b), 1644 (similar).

26. Critically, Congress passed the latter provision to fix a specific problem, after it observed "certain states and localities were restricting their officials' cooperation with federal immigration authorities."  *New York v. U.S. Dep't of Justice*, 951 F.3d 84, 96 (2d Cir. 2020); *see New York*, 179 F.3d at 35.  Thus, in enacting Section 1373, "Congress sought to give state and local officials the authority to communicate with [federal immigration authorities] regarding the presence, whereabouts, or activities of illegal aliens, notwithstanding any local laws to the contrary."  *New York*, 951 F.3d at 97 (citations omitted).

27. In short, under federal immigration laws—and our system of government—state and local governments *do not have* "an untrammeled right to forbid all voluntary cooperation by [their] officials" with federal immigration authorities.  *New York*, 179 F.3d at 35.  Indeed, Congress has affirmatively outlawed any effort to "conceal, harbor, or shield from detection" any "alien in any place[.]"  8 U.S.C. § 1324(a)(1)(A)(iii).

## FACTUAL BACKGROUND

28. In 2019, New York added Section 201.12 to its Vehicle and Traffic Law (herein, its "Green Light Law").  It also created a system by which illegal aliens could obtain standard, not-for-federal purposes, non-commercial driver's licenses or permits.

29. As amended in 2020, the Green Light Law has three main provisions.

30. *First*, the Green Light Law prohibits the Commissioner of the New York DMV—as well as his agents or employees—from sharing any DMV "records or information" with "any agency that primarily enforces immigration law or to any employee or agent of such agency," absent a federal court order or judicial warrant. N.Y. Veh. & Traf. § 201.12(a). The Law states that such agencies "shall include, but not be limited to" ICE and CBP, thereby leaving the determination of which other agencies "primarily enforce[] immigration law" wholly to the discretion of the DMV Commissioner. *Id.* § 201.12(c).

31. The DMV "records or information" covered by this provision include a person's "photo image, . . . social security number, telephone number, place of birth, country of origin, place of employment, school or educational institution attended, source of income, status as a recipient of public benefits, the customer identification number associated with a public utilities account, [and] medical information or disability information[.]" *Id.* § 201.8.

32. *Second*, the Green Light Law includes a tip-off provision, wherein the DMV Commissioner "shall"—within three days of receiving a request for "records or information from an agency that primarily enforces immigration law"—"notify the individual about whom such information was requested, informing such individual of the request and the identity of the agency that made such request." *Id.* § 201.12(a).

33. *Third*, the Green Light Law imposes strict limitations on those who have access to or receive "records or information" from the New York DMV. *Id.* § 201.12(b). One must "certify" to the Commissioner that he or she will not "use such records or information for civil immigration purposes" or "disclose such records or information to any agency that primarily enforces immigration law or to any employee or agent of any such agency" (unless there is a cooperative agreement that does not involve enforcement of immigration law). *Id.* The Law also requires that

"any person or entity certifying pursuant to this paragraph shall keep for a period of five years records of all uses and identifying each person or entity that primarily enforces immigration law that received department records or information from such certifying person or entity"—plus make those records available for inspection by the DMV Commissioner upon request. *Id.* Violations of these certification and record-keeping requirements are subject to a Class E felony penalty, with punishments of up to four years in prison and $5,000 in fines. *Id.*; N.Y. Penal Code §§ 70.00(2)(e), 80.00(1)(a).

34. The Green Light law contains narrow exceptions, allowing DMV records or information to be given to federal immigration agencies "as required for the commissioner to issue or renew a driver's license or learner's permit that meets federal standards for identification, as necessary for an individual seeking acceptance into a trusted traveler program, or to facilitate vehicle imports and/or exports[.]" N.Y. Veh. & Traf. § 201.12(a). But even where one of these exceptions applies, the Law's tip-off provision, and the provision prohibiting the use of such information for civil immigration purposes and the sharing of such information to another agency that primarily enforces immigration law, still apply. For instance, if CBP were to receive New York DMV material in order to process an application under the trusted traveler program, CBP would nonetheless be restricted—again, on penalty of felony—from sharing that material with ICE because ICE works to primarily enforce immigration law. *See id.* § 201.12(b).

35. The sponsors and supporters of the Green Light Law were candid about its objective. The Law was designed to "secure driving privileges" for "undocumented immigrants," while "protect[ing]" them from federal law enforcement.[3] As Assembly Member Catalina Cruz

---

[3] *See* New York State Senate, S1747B, 2019–2020 Regular Sess. (N.Y. 2019), https://www.nysenate.gov/legislation/bills/2019/S1747?intent=support.

put it: "We passed a strong, comprehensive bill that not only permits undocumented individuals in the state to obtain driver's licenses, but also protects their personal data from the federal government."[4]  Or in the words of its sponsor, Senator Luis Sepúlveda: The Law allows illegal aliens to "move freely" throughout New York "without fear" that federal law will be enforced against them.[5]

### New York's Green Light to Illegal Immigration

36. New York's Green Light Law has worked exactly as designed—it has materially impeded the Federal Government's ability to enforce the federal immigration laws.

37. The Green Light Law keeps critical information from the Federal Government—like driver's license information, vehicle registration information, and photographs—which federal officers need to effectively perform mission-critical law enforcement operations.

38. DMV information (*e.g.*, one's home and work address) is relevant to the following sorts of immigration-status determinations: (1) whether an alien admitted in a particular nonimmigrant status (*e.g.*, B-1 business visitor) has stayed in the United States beyond his or her authorized period of admission, evidenced an intent not to abandon his or her foreign residence, or otherwise violated the conditions of such admission (*e.g.*, engaged in unauthorized employment), 8 U.S.C. § 1227(a)(1)(C); (2) whether the alien has been granted work authorization as a benefit attached to a particular status or form of relief, 8 C.F.R. 274a.12; (3) whether the alien has kept DHS informed of any change of address as required by 8 U.S.C. § 1305; and (4) whether an alien has accrued the necessary continuous presence to be eligible for removal relief, *id.* §§

---

[4] *See* New York Immigration Coalition, *All New Yorkers Will Have a Green Light to Drive Beginning December 16* (Dec. 9, 2019), https://www.nyic.org/2019/12/all-new-yorkers-will-have-a-green-light-to-drive-beginning-december-16/.
[5] *See* CNN, *New York Passes Bill to Allow Driver's Licenses for Undocumented Immigrants* (June 17, 2019), https://www.cnn.com/2019/06/17/us/new-york-green-light-bill/index.html.

1229b(a)(1), (a)(2), (b)(1)(A). The Green Light Law works to impair federal immigration officials' access to this information.

39. The Green Light Law also impedes the Federal Government's ability to arrest and remove illegal aliens, thereby threatening the safety of Americans, including those in New York. For example, ICE's Enforcement and Removal Operations ("ERO") component is responsible for arresting and removing certain illegal aliens. In discharging these duties, ERO officers arrest tens of thousands of illegal aliens who have been accused of, charged with, or convicted of committing serious criminal offenses—such as homicide, sexual assault, kidnapping, robberies, and other crimes. And as with other law enforcement operations, being able to access DMV records—whether as part of a traffic stop, surveillance operation, or in executing a warrant—is indispensable for this work, because it is often one of the best sources of real-time information about a target or his associates. DMV data also are used to determine the whereabouts and presence of an enforcement target in a particular state. The Law shuts out, however, federal immigration authorities from this oft-needed information, thereby compromising their ability to do their jobs and to keep Americans safe.

40. Moreover, the Green Light Law directly threatens the safety of federal immigration officials themselves. Namely, the Law prevents CBP and ICE officers (along with officers of any other federal agency that the DMV Commissioner decides "primarily enforces immigration law") from getting essential information real-time on individuals they are about to encounter. For instance, when CBP officers at land ports of entry in New York encounter an individual, the Law restricts their visibility into that person's background, to determine whether safety concerns merit further inspection or precautions. Or when U.S. Border Patrol agents stop a New York-licensed vehicle near the border, they lack access to information that could provide valuable insight into

whom they are stopping, and whether the car has been involved in illicit or suspicious activity. Or when an ICE ERO officer does the same—or runs a check on New York-licensed vehicles outside a residence or place of business, before executing a warrant—he or she too is no longer able to check the license plate to determine the vehicle's owner, which could reveal the owner has a criminal record or has been flagged as dangerous. In each scenario, the fundamental problem remains the same—New York's Green Light Law is putting at risk the lives of those on the front lines of federal immigration enforcement.

41. Finally, the Green Light Law also impairs the Federal Government's broader law enforcement capacity. Because of the Law's certification requirement, the Federal Government is unable to share information across all its law enforcement agencies unimpeded. This poses a serious problem for deconfliction efforts among law enforcement agencies, who need to be able to freely communicate to ensure that one operation does not undercut another. The Government uses state DMV information daily to identify, locate, and arrest individuals as part of ongoing investigations into narcotics smuggling, child exploitation, human trafficking, trans-national gangs, national security, identity and benefit fraud, and much more. The difference between catching these criminals or letting them escape is often a matter of minutes—and depends on getting the right information into the right hands timely. Because of the Green Light Law, that crucial material may be shielded from the appropriate federal officers, putting their lives and safety and the public in harm's way. The Green Light Law must be enjoined to put an end to these senseless, unlawful risks.

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE
## (PREEMPTION)

42. Plaintiff hereby incorporates paragraph 1 through 41 of the Complaint as if fully stated herein.

43. The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

44. New York's Green Light Law violates the Supremacy Clause because it is expressly preempted by Section 1373's requirement that States "not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373.

45. New York DMV records show "information regarding" an alien's "citizenship or immigration status," because they bear on whether an alien is removable or has been ordered removed. New York's Green Light Law illustrates *precisely* why Congress enacted Section 1373 in the first place—and thus falls within the heartland of what that provision preempts. *See New York*, 951 F.3d at 96; *New York*, 179 F.3d at 35; *see also, e.g.*, H.R. Rep. No. 104-725, at 383 (1996) (Section 1373 ensures that state and local officials will be free to voluntarily "communicate with [federal authorities] regarding the presence, whereabouts, or activities of illegal aliens").

46. New York's Green Light Law is also conflict preempted because it "stands as an obstacle to the accomplishment and execution" of the federal immigration laws. *Arizona*, 567 U.S. at 406 (citation omitted).

47. Establishing an "obstacle" to the enforcement of federal immigration law was the *entire point* of the Green Light Law. And it accomplishes that end at every turn. The Green Light Law frustrates the principles of cooperation underlying the immigration laws, barring state and local officials from sharing material with federal immigration officials—even when they wish to do so. It further limits how the Federal Government can share material across (or even within) its own components, interfering with the information-sharing system in place among agencies for "homeland security information[.]" *E.g.*, 6 U.S.C. § 482.

48. The Green Light Law also creates an obstacle undermining general federal immigration enforcement efforts. Its tip-off provision requires the New York DMV Commissioner to tell illegal aliens that their information has been requested by a federal immigration agency. *Contra* 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to "attempt[]" to "shield from detection" any illegal alien).

49. Accordingly, New York's Green Light Law violates the Supremacy Clause.

**COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE
(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

50. Plaintiff hereby incorporates paragraphs 1 through 49 of the Complaint as if fully stated herein.

51. New York's Green Light Law violates basic principles of intergovernmental immunity by unlawfully regulating the Federal Government. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).

52. The Green Light Law does just that. The Law's restrictions on information sharing between and among Federal Government agencies, and its certification requirement, constitute unlawful direct regulation of the Federal Government.

53. Accordingly, New York's Green Light Law violates the Intergovernmental Immunity Doctrine in violation of the Supremacy Clause.

### COUNT THREE – VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

54. Plaintiff hereby incorporates paragraphs 1 through 53 of the Complaint as if fully stated herein.

55. New York's Green Light Law "singles out" federal immigration authorities, specifically ICE and CBP, for disfavored treatment—exactly what intergovernmental-immunity principles bar. *See Dawson v. Steager*, 586 U.S. 171, 178 (2019). The Law limits information-sharing *only* with "any agency that primarily enforces immigration law"—which definitionally is federal, given the United States' exclusive authority over immigration. *See* N.Y. Veh. & Traf. § 201.12(a).

56. Such discriminatory targeting of the Federal Government is unlawful. *See, e.g.*, *United States v. Washington*, 596 U.S. 832, 839 (2022) (A "state law discriminates against the Federal Government . . . if it singles them out for less favorable treatment or if it regulates them unfavorably on some basis related to their governmental status.") (citations and alterations omitted).

57. For this additional, separate reason, New York's Green Light Law violates the Intergovernmental Immunity Doctrine in violation of the Supremacy Clause.

### PRAYER FOR RELIEF

The United States respectfully requests the following relief:

A. That this Court enter a judgment declaring that New York's Green Light Law violates the Supremacy Clause, and is therefore both unlawful and unenforceable;

  B.  That this Court enter a permanent injunction barring Defendants—as well as any of their successors, agents, or employees—from enforcing New York's Green Light Law;

  C.  That this Court award the United States its fees and costs in this action; and

  D.  That this Court award any other relief it deems just and proper.


DATED: February 12, 2025

                   BRETT A. SHUMATE
                   Acting Assistant Attorney General
                   Civil Division

                   DREW C. ENSIGN
                   Deputy Assistant Attorney General
                   AUGUST FLENTJE
                   Deputy Director
                   EREZ REUVENI
                   Assistant Director
                   Office of Immigration Litigation

                   ERIC HAMILTON
                   Deputy Assistant Attorney General
                   ALEXANDER K. HAAS
                   Director
                   JACQUELINE COLEMAN SNEAD
                   Assistant Director
                   CRISTEN C. HANDLEY
                   ELISABETH J. NEYLAN
                   Trial Attorneys
                   Federal Programs Branch

                   *Attorneys for the United States*