UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

           Plaintiff,

           v.

STATE OF NEW YORK; KATHLEEN HOCHUL, Governor of New York, in her Official Capacity; LETITIA A. JAMES, Attorney General of New York, in her Official Capacity; MARK J. F. SCHROEDER, Commissioner of the New York State Department of Motor Vehicles, in his Official Capacity,

           Defendants.

No. 25-cv-205 (AMN) (MJK)

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
*New York State Attorney General*
28 Liberty Street
New York, New York 10005

LINDA FANG
  *Special Litigation Counsel*
ALEX POWHIDA
  *Special Litigation Counsel*
     *of Counsel*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

    I.    THE COMPLAINT FAILS TO STATE A PREEMPTION CLAIM ........................................... 1

        A.    Section 1373 Does Not Expressly Preempt the Act's Provisions .............................. 1

            1.    Plaintiff's proffered interpretation of § 1373 is contrary to the statutory text and the legislative history ............................................................. 1

            2.    Plaintiff's other arguments concerning § 1373 are meritless .......................... 4

        B.    Plaintiff's preemption claim likewise fails under conflict theories ........................... 6

    II.    THE COMPLAINT FAILS TO STATE AN INTERGOVERNMENTAL IMMUNITY CLAIM .................................................................................................................... 9

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Allstate Ins. Co. v. Serio*, 261 F.3d 143 (2d Cir. 2001) .................................................................. 4

*Anderson v. La Junta State Bank*, 115 F.3d 756 (10th Cir. 1997) .................................................. 8

*Arizona v. United States*, 567 U.S. 387 (2012) .............................................................................. 6

*Chaudhry v. Holder*, 705 F.3d 289 (7th Cir. 2013) ........................................................................ 2

*City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018) ................................................ 6

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) ................................................. 5, 6

*De Dandrade v. U.S. Dep't of Homeland Security*,
   367 F. Supp. 3d 174 (S.D.N.Y. 2019) ......................................................................................... 3

*Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) ................................................................ 9

*Hohman v. Eadie*, 894 F.3d 776 (6th Cir. 2018) ............................................................................. 8

*In re Grand Jury Subpoena to Facebook*,
   2016 WL 9274455 (E.D.N.Y. May 12, 2016) ............................................................................ 8

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) .................................................... 2

*Leonard F. v. Israel Discount Bank*, 199 F.3d 99 (2d Cir. 1999) ................................................... 4

*McHenry Cnty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022) .................................................................. 7

*Murphy v. National Collegiate Athletic Ass'n.*, 584 U.S. 453 (2018) ............................................ 6

*New York State Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ........................... 2

*Pierre v. Holder*, 588 F.3d 767 (2d Cir. 2009) ............................................................................... 3

*Printz v. United States*, 521 U.S. 898 (1997) ................................................................................. 7

*Reno v. Condon*, 528 U.S. 141 (2000) ............................................................................................ 7

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ..................................................... 4, 7, 8

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010) ................................................. 9, 10

**Cases**                                                                                                                       **Page(s)**

*United States v. King County*, 122 F.4th 740 (9th Cir. 2024) .......................................................... 9

*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (2019) ................................................................ 7

**Statutes**

5 U.S.C. § 552a ............................................................................................................................. 10

8 U.S.C. § 1229a ............................................................................................................................. 2

8 U.S.C. § 1255 ............................................................................................................................... 2

8 U.S.C. § 1357 ............................................................................................................................. 10

8 U.S.C. § 1360 ............................................................................................................................... 3

8 U.S.C. § 1373 ....................................................................................................................... 1, 3, 4

VTL § 201 ....................................................................................................................................... 9

**Regulations**

8 C.F.R. § 245.1 .............................................................................................................................. 2

**Other Authorities**

H.R. Conf. Rep. 104-725 (1996) ................................................................................................. 3, 4

# ARGUMENT

The New York Driver's License Access and Privacy Act ("the Act") is a valid exercise of the State's police powers and furthers the public safety and economic interests of the State by permitting all eligible residents, regardless of immigration status, to be licensed to drive. As defendants explained in their moving brief, the Act's attendant provisions protecting the personal information of the State's drivers and restricting access to and use of such protected information for purposes unrelated to licensing do not conflict with any federal law and are thus not preempted. *See* Defs.' Br. (ECF No. 10-1) at 13-22. The challenged portions of the Act also do not violate the intergovernmental immunity doctrine because they do not directly regulate or impermissibly discriminate against the federal government by treating similarly situated actors more favorably. *Id.* at 22-25. Plaintiff's arguments in opposition are uniformly unavailing. Accordingly, the complaint should be dismissed in its entirety.

## I. THE COMPLAINT FAILS TO STATE A PREEMPTION CLAIM

### A. Section 1373 Does Not Expressly Preempt the Act's Provisions

In their opening brief, defendants demonstrated that the Act's confidentiality, notification, and certification provisions are not expressly preempted by 8 U.S.C. § 1373 for two independent reasons. *See* Defs.' Br. at 13-19. First, section 1373, which pertains to "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," does not reach DMV information. Second, even if it did, section 1373 is not a valid preemption provision because it regulates the State and its officials, and not private actors. In response, plaintiff posits arguments that have been rejected by every federal court to have considered them. So too should this Court.

#### 1. Plaintiff's proffered interpretation of § 1373 is contrary to the statutory text and the legislative history

In urging the Court to adopt a boundless construction of "information regarding …

citizenship or immigration status" in § 1373, plaintiff misplaces its reliance on "regarding." *See* Pl.s' Opp. (ECF No. 24-1) at 8-9. To be sure, "regarding" has "a broadening effect," *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-18 (2018), but it does not "extend to the furthest stretch of its indeterminacy," otherwise "for all practical purposes pre-emption would never run its course." *New York State Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). While the use of "regarding" evinces congressional intent that "the scope of a provision covers not only its subject but also matters relating to that subject," *Appling*, 584 U.S. at 717-18, the relevant subject here, according to the statutory text, is a person's "citizenship or immigration status," not the person. Plaintiff's insistence that Congress's use of "regarding" in § 1373(a) encompasses all information maintained by DMV about a person, including vehicle registration, address, height, weight, hair and eye color, and facial features (Pl.'s Opp. at 8-9, 15-16), would impermissibly read the words "citizenship or immigration status" out of the statute altogether.

As a textual matter, plaintiff is also wrong in contending that "information regarding … immigration status" in § 1373 is synonymous with information about a person's removability and detention (Pl.'s Opp. at 9). Whether an individual may be detained or removed is distinct from the concept of "immigration status." Although the term "immigration status" is not defined in the federal immigration laws, *e.g., Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013), DHS's own regulations define "lawful immigration status" in categorical terms to refer to lawful permanent residents, refugees, asylum seekers, among others, and make no reference to removability. *See* 8 C.F.R. § 245.1(d)(1), (e); 8 U.S.C. § 1255 (providing for "adjustment of status" for changing immigration classification). In contrast, removability is not an "immigration status" identified under the applicable regulations, but is instead a legal determination made by an immigration judge separate and apart of the individual's immigration status. *See* 8 U.S.C. § 1229a

(removal proceedings); *Pierre v. Holder*, 588 F.3d 767, 770 (2d Cir. 2009) (removal proceedings initiated against lawful permanent resident).

Plaintiff is further mistaken in arguing that Congress's use of the term "status information" in § 1373(c) supports a broader meaning of "information regarding . . . immigration status" in § 1373(a). *See* Pl.'s Opp. at 9. Viewed in the context of the statute as a whole, subsections (a) and (c) are most naturally read as mirror images of each other: whereas subparagraph (a) confers authority on "a Federal, State, or local government entity, or official" to exchange immigration status information with federal immigration authorities, subparagraph (c) mandates that federal immigration authorities must provide the same "status information" when "a Federal, State, or local government agency" asks for it. *See* 8 U.S.C. § 1373(a), (b), (c).

Additionally, as defendants previously explained (Defs.' Br. at 13-14), Congress's use of substantially broader language in neighboring laws concerning information sharing, by, for example, requiring the provision of "[a]ny information in any records kept by any department or agency of the [federal] Government as to the identity and location of aliens in the United States," 8 U.S.C. § 1360(b), without employing similarly broad language in § 1373, evinces Congress's "deliberate choice" of a narrower reach as to the information covered by § 1373. *See, e.g.*, *De Dandrade v. U.S. Dep't of Homeland Security*, 367 F. Supp. 3d 174, 191-92 (S.D.N.Y. 2019).

Plaintiff's reliance on the legislative history is also misplaced. Critically, notwithstanding the statement in the conference report relied on by plaintiff (Pl.'s Opp. at 8) that the conferees intended that "no State or local government entity shall prohibit, or in any way restrict, any entity or official from sending to or receiving from [federal immigration authorities] information regarding the immigration status of an alien *or the presence, whereabouts, or activities of illegal aliens*," *see* H.R. Conf. Rep. 104-725, 383 (1996), only the former phrase (concerning immigration

3

status information) was enacted in the statute itself. Further, that the conference report uses the terms "information regarding the immigration status" and "the presence, whereabouts, or activities" in the disjunctive, *see id.*, shows that Congress understood the two terms to be distinct. *See United States v. California*, 921 F.3d 865, 892 (9th Cir. 2019). In any event, legislative history cannot be used to overcome the plain language of a statute because "it is the statute, and not the Committee Report, which is the authoritative expression of the law." *Leonard F. v. Israel Discount Bank*, 199 F.3d 99, 105-06 (2d Cir. 1999) (cleaned up). Thus, even were the Court to consider it, the legislative history refutes—rather than supports—plaintiff's urged construction.

Moreover, the Court should avoid construing § 1373 in the way urged by plaintiff because doing so may unnecessarily implicate constitutional questions (*see* Defs.' Br. at 17). *See Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001) (courts should "take pains to give a statute a limiting construction in order to avoid a constitutional difficulty"). Instead of construing § 1373 as imposing a prohibition on state rulemaking, sections 1373(a) and (b) are more naturally read as authorizing state officials to share citizenship or immigration status information—if state policymakers opt to do so. *See* 8 U.S.C. § 1373(b) (titling subprovision "*[a]dditional authority* of governmental entities") (emphasis added). This construction is confirmed by the language in the conference report cited by plaintiffs stating that the "conferees intend to give State and local officials *the authority* to communicate with" federal immigration officials—expressly disclaiming that the statute imposes any mandatory disclosure or reporting requirement. *See* H.R. Conf. Rep. 104-725, 383 (stating that the statute "does not require, in and of itself, any government agency or law enforcement official to communicate with" federal immigration authorities).

### 2. Plaintiff's other arguments concerning § 1373 are meritless

Plaintiff offers no meaningful response to defendants' argument that § 1373 cannot be a

4

valid basis for preemption because it does not regulate private actors. Aside from summarily dismissing the unanimous precedents that have held to the contrary as "non-binding" (Pl.'s Opp. at 9), plaintiff does not explain why the straightforward conclusions reached by each of these other federal courts was wrong. Plaintiff's insistence that § 1373(a) "'imposes restrictions . . . on private actors'—aliens—by facilitating the enforcement of federal laws against those actors" (Pl.'s Opp. at 10), finds no support in the statutory text. Nothing in § 1373(a) purports to regulate noncitizens, or speaks to the enforcement of federal law. Rather, as other courts have consistently held, section 1373 constitutes a naked direction to state officials, and thus cannot be the basis for any preemption. *See* Defs.' Br. at 16-19 (collecting cases).

In attempting to avoid this result, plaintiff argues that § 1373(a) "does not directly compel states or localities to require or prohibit anything" while simultaneously insisting that § 1373(a) "prohibits state and local governmental entities or officials [] from directly restricting the voluntary exchange of immigration information with the Federal Government." *See* Pl.'s Opp. at 10. But both things cannot be true. Indeed, its argument that § 1373(a) prohibits state rules governing how officials handle personal information about its residents and respond to outside inquiries for information is the very crux of plaintiff's preemption claim.

Contrary to plaintiff's claim, *City of New York* does not compel a different result. *See* Pl.'s Opp. at 9-11. There, the Second Circuit upheld § 1373 against a facial Tenth Amendment challenge. *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999). Central to the court's conclusion in *City of New York* was the perceived distinction "between invalid federal measures that seek to impress state and local governments into the administration of federal programs and valid federal measures that prohibit states from compelling passive resistance to particular federal programs." *Id.* But the Supreme Court has since rejected this distinction as "empty," explaining

5

that the Tenth Amendment's proscription applies equally to laws which command "'affirmative' action" on the part of state legislatures and those which impose prohibitions on state legislatures: "[i]n either event, state legislatures are put under the direct control of Congress" in violation of the Tenth Amendment. *Murphy v. National Collegiate Athletic Ass'n.*, 584 U.S. 453, 474-75 (2018).

Regardless, the Second Circuit expressly left open in *City of New York* the question of whether § 1373 "would survive a constitutional challenge in the context of generalized confidentiality policies that are necessary to the performance of legitimate [governmental] functions," like those challenged here. *See* 179 F.3d at 37. *City of New York* is thus of no assistance to plaintiff in avoiding dismissal. *See, e.g.*, *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 873 (N.D. Ill. 2018) (observing "Murphy's holding deprives City of New York of its central support").

### B.    Plaintiff's preemption claim likewise fails under conflict theories

To invalidate a state law under conflict theories, "compliance with both federal regulations must be a physical impossibility," or the challenged state law must stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Here, plaintiff does not allege that it would be impossible to comply with the Act's provisions and federal law. Nor has plaintiff identified any valid objective underlying the federal immigration laws that the challenged portions the Act purports to obstruct.

In support of its conflict preemption claim, plaintiff gestures to generalized notions of cooperation and information sharing underlying the immigration laws. *See* Pl.'s Opp. at 13, 15. It may be, as plaintiff contends, that Congress had "a clear expectation" of "coordination" and cooperation between federal, state, and local authorities when it enacted the federal immigration laws. *See* Pl.'s Opp. at 13. "But when questions of federalism are involved, we must distinguish between expectations and requirements. In [the immigration] context, the federal government was

6

free to *expect* as much as it wanted, but it could not *require* [a State's] cooperation without running afoul of the Tenth Amendment." *California*, 921 F.3d at 890-91 (emphasis in original); *accord McHenry Cnty. v. Raoul*, 44 F.4th 581, 591-92 (7th Cir. 2022) ("Congress may have hoped or expected that States would cooperate with" federal immigration enforcement, but "States are not bound by that hope or expectation" in light of Tenth Amendment).

In any event, as defendants have explained (Defs.' Br. at 19-22), the challenged provisions of the Act are not conflict preempted because there is no federal mandate that state officials cooperate with immigration enforcement or share information with federal officials to begin with. Plaintiff's opposition is entirely silent on this point. For good reason. No such laws exist because the Supreme Court has made clear that federal laws mandating state actors' provision of "information that belongs to the State and is available to them *only in their official capacity*" and requiring state officials to "examin[e] databases and records that *only state officials have access to*" are constitutionally infirm. *Printz v. United States*, 521 U.S. 898, 932 n.17 (1997) (emphasis added); *cf. Reno v. Condon*, 528 U.S. 141, 151 (2000) (rejecting a State's Tenth Amendment challenge to federal law that prohibits driver information from being sold by private actors and state governments alike). In the absence of any federal laws mandating disclosure or cooperation, state laws concerning how state employees may communicate with federal officials about the personal information of state residents do not conflict with—and thus cannot be preempted by— any federal scheme. *See Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) ("Invoking some brooding federal interest" is insufficient "to win preemption of a state law; a litigant must point specifically to 'a constitutional text or a federal statute that does the displacing'").

Nor is plaintiff aided by its unfounded attempts to recharacterize the State's permissible policy choice not to share personal information obtained from its residents for state licensing

functions as obstruction. *See* Pl.'s Opp. at 14-15. Nothing in plaintiff's allegations supports any inference that any of the Act's challenged provisions are actively preventing federal immigration authorities from carrying out their immigration enforcement activities—only that having unfettered access to the State's DMV information will make immigration enforcement activities easier. But as the Ninth Circuit explained in rejecting the identical argument in an analogous preemption action, a state law that directs state officials to not "assist federal immigration enforcement in its endeavors is not an 'obstacle' to that enforcement effort" simply because enforcement would be more burdensome "than it would be if state and local [officials] provided immigration officers with their assistance." *California*, 921 F.3d at 888.

Plaintiff's attempt to distinguish the cases which recognized that notification provisions like those challenged here further privacy interests and do not constitute obstruction (Pl.'s Opp. at 13-14) is unavailing. Contrary to plaintiff's claim (Pl.'s Opp. at 14), each of the cases cited by defendants (Defs.' Br. at 12-13) *did* concern "federal investigatory activities" like that at issue here. *See Anderson v. La Junta State Bank*, 115 F.3d 756, 757 (10th Cir. 1997) (military investigation and subpoena); *Hohman v. Eadie*, 894 F.3d 776, 779 (6th Cir. 2018) (IRS administrative summons); *In re Grand Jury Subpoena to Facebook*, 2016 WL 9274455 (E.D.N.Y. May 12, 2016) (federal criminal investigation). And in *Grand Jury Subpoena*, which implicated a federal law requiring communications providers to notify the subject of an investigative request for records, the court expressly rejected the same argument advanced here—that obstruction upon notification should be presumed. *See In re Grand Jury Subpoena*, 2016 WL 9274455 at *4.

Plaintiff further misses the mark in contending that the Act's notification provision does not further any privacy interests because it requires DMV to notify individuals of "a request for their information while barring the disclosure of that information." *See* Pl.'s Opp. at 14. This

8

misreads the statute. As administered by DMV, the Act's notification provision is triggered only upon a request for records and information from immigration authorities that is accompanied by a lawful court order or judicial warrant, not by invalid requests that do not satisfy the standards for disclosure. *See* VTL § 201(12)(a) (barring disclosure "unless the commissioner is presented with a lawful court order or judicial warrant," and requiring notification to subject of request "[u]pon receiving a request for *such records or information* from an agency that primarily enforces immigration law") (emphasis added). By providing for notification when disclosure occurs, the Act merely ensures that individuals may act to assert their rights with respect to their personal information. These rights are particularly important where there may be reason to believe that inquiries are mistaken or misdirected, especially in the immigration context where the consequences of mistakes, as recent events have demonstrated, may be severe and irreparable.

## II.    THE COMPLAINT FAILS TO STATE AN INTERGOVERNMENTAL IMMUNITY CLAIM

Unlike the laws at issue in the authorities cited by plaintiff (Pl.'s Opp. at 19-21), the Act's certification provisions do not directly restrict or prevent federal officials from performing their official duties. *Cf. United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (local ordinance prohibiting federal military recruiters from recruiting constituted unlawful regulation of federal activities); *United States v. King County*, 122 F.4th 740, 756 (9th Cir. 2024) (county order that prevented the federal government from exercising its contractual right to use of county airport for deportations invalid); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 757-58 (9th Cir. 2022) (state law that would have required federal immigration authorities "to cease its ongoing detention operations in California" violated Supremacy Clause). Notwithstanding the Act, federal immigration authorities remain free to carry out enforcement activities in the State, which they have been doing both before and after the Act's enactment.

At bottom, there is no general federal entitlement to personal information about the State's residents obtained by the State solely for the purpose of performing state functions and maintained by the State in state systems. Contrary to plaintiff's suggestion, requiring the federal government to abide by legal processes governing search and seizure—by obtaining a court order or judicial warrant—to obtain such protected information does not impermissibly "regulate federal functions" or "hamstring federal operations." *See* Pl.'s Opp. at 19. It merely requires the federal government follow basic due process. Just as federal officials are generally prohibited from disclosing personal information obtained from official databases for non-permitted uses and must account for any such disclosures, *e.g.*, 5 U.S.C. § 552a(b)(1)-(13), (c), the State is permitted to restrict access to personal information about its residents that the State obtained for performing state licensing functions.

Nor, as defendant previously explained, do the challenged provisions of the Act discriminate against the government by restricting the use of DMV information for civil immigration purposes. *See* Defs.' Br. at 24; *cf. Arcata*, 629 F.3d at 988, 991 (local law prohibiting federal military recruiting but exempting private actors invalid). Here, the Act's certification provision applies to all "similarly situated" actors (anyone with access to DMV information), and imposes the same restriction (prohibiting use for civil immigration enforcement purposes) on all such persons, which may include state or local actors (in addition to federal officials), *see* 8 U.S.C. § 1357(g). *See Raoul*, 44 F.4th at 594. Where, as here, the Tenth Amendment permits the State to decline to assist with federal immigration efforts, the State's choice to disentangle its officials from immigration enforcement cannot be invalidated merely by recasting that otherwise permissible policy choice under the intergovernmental immunity lens.

## CONCLUSION

The complaint fails to state a claim and should be dismissed in its entirety.

Dated:   New York, New York
         May 9, 2025

                        Respectfully submitted,

                        LETITIA JAMES
                         *New York State Attorney General*
                        Attorney for Defendants

By:    /s/ Linda Fang
        Linda Fang
        Special Litigation Counsel
        28 Liberty Street
        New York, New York 10005
        (212) 416-8580

        Alex Powhida
        Special Litigation Counsel
        The Capitol
        Albany, New York 12224
        (518) 776-2584